Johnson, J.
This policy was delivered and took effect May 17, and by its terms was good" for one year unless sooner terminated in accordance with its terms and conditions. On its face, the premium was payable in cash, and one of the conditions was, that, “ no insurance shall be considered binding, until the actualpa/y.ment of the premium.” By the delivery of the policy without such payment, and by taking a note of the insurer, nine days thereafter, payable in sixty days, this condition was waived, and the policy wás in force, notwithstanding this condition, until lawfully canceled, under this or some other condition contained therein, or under the option reserved in the sixth condition.
The note not being paid, and its makers being insolvent, *116 the company, after waiting some forty-five days, canceled the policy, and notified the insured and the Charter Oak Co., and others ‘ interested, of the fact. This was in September. In December the loss occurred. This policy was good for one year, unless terminated lawfully. The sixth condition provided that the insured might terminate the insurance at any time on request, in which case the company should retain only the customary short rates for the time the policy had been in force. This is an unqualified right, reserved to the insured to terminate the policy at any time during the year for any cause. If the premium had been paid in cash, the insurer would have been compelled to refund the unearned premium after charging for the time the policy was in force at the customary short rates. As a note had been given, and was still in the hands of the payee, the insured could have terminated the policy, by paying or tendering the amount due, at short rates, and demanding a return of the note; but as no payment had been made, no money had to be returned by the insurer, under this clause. This right to terminate the policy, was mutual. The company reserved the option to at any time, put an end to the policy, “ on giving notice to that effect, and tendering a pro rata proportion of the premium for the unexpired term thereof.” In case the premium had been actually paid for the year, the pro rata share thereof from September 9, to the end of the year, must have been tendered back, before this option could be exercised. In the present case, no money had actually been paid. The company still held a past-due note, for the premium, on which there was due the amount earned to the date of cancellation. It was claimed, and the evidence tended strongly to support that claim, that this note was not Gollectible. The company credited $Y5 on the note, being the amount of the unearned premium, if the pro-rating is computed by months, and if the fraction of May, M days, and of September, 9 days, are counted as a month, but if the prorating is by days, that amount is too small by two or three dollars.
On this state of fact, the court in effect charged, that it was not necessary to tender back the cash, for the unearned *117 premium, nor was the right to cancel defeated by a failure to credit the exact amount, or indeed any amount.
In this we concur. The effect of taking the note, was to give the policy life, notwithstanding the fifth condition, but it did not divest the company of its right reserved in the sixth condition to terminate the insurance at any time on giving notice, and, in case the premium had been paid, tendering back the unearned proportion thereof. As nothing had been paid, nothing was to be tendered back. The only duty imposed on the company, was, when the premium had not been paid, to give notice in reasonable time before the fire. This the jury found was done.
The contract of insurance is a contract of indemnity upon the terms and conditions specified in the policy. The insurer undertakes, for comparatively small premium, which good faith requires should be paid, to guaranty against loss or damage upon the terms and conditions agreed upon, and upon none other. He may, therefore, justly insist upon the fulfillment of those terms. We cannot make a new contract for the parties. Good faith is the life breath of the contract. The payment of the premiums is an essential element of the contract, to enable the -company to meet its obligations. Whatever may have been the right of the company before the maturity of the note to terminate the insurance for other causes, we think it clear, that after the note became due, and was not paid, this option might be exercised upon giving reasonable notice thereof, before the loss occurred.
Again, it is said, the amount credited on the note was too small. Concede this, the note was past due, and had not been negotiated. In any action brought thereafter for the earned premium, the correct credit could have been computed and allowed. This note was subject to such credit in whosever hands it should be found.

Judgment affirmed.